**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE CASTALDI, Individually and For Others Similarly Situated<br><br>v.<br><br>DOCGO INC. d/b/a AMBULNZ BY DOCGO | Case No. 1:25-cv-8842<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Stephanie Castaldi brings this class and collective action to recover unpaid wages and other damages owed by DocGo Inc. d/b/a Ambulnz by DocGo under the Fair Labor Standards Act (FLSA), Pennsylvania Minimum Wage Act (PMWA), Pennsylvania Wage Payment and Collection Law (WPCL), and New Jersey Wage and Hour Law (NJWHL).

2. Castaldi worked for DocGo as an emergency medical technician (EMT).

3. DocGo paid Castaldi by the hour.

4. Castaldi regularly worked 12 hours a day, 4 days a week.

5. But DocGo did not pay Castaldi at least 1.5 times her regular rates of pay—based on all remuneration—for all hours worked after 40 in a week.

6. Instead, DocGo paid Castaldi non-discretionary bonuses and shift differentials that it excluded from the "regular rate" for overtime purposes (the "bonus pay scheme").

7. DocGo's bonus pay scheme violates the FLSA, PMWA, WPCL, and NJWHL because overtime is not paid at 1.5 times its employees' regular rates of pay.

### JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. DocGo is subject to general personal jurisdiction because it maintains its principal place of business in New York.

11. Venue is proper because DocGo maintains its principal place of business in Manhattan, New York, which is in this District. 28 U.S.C. §1391(b)(1).

**PARTIES**

12. Castaldi was an EMT employed by DocGo from approximately October 2022 through December 2023.

13. Throughout her employment, DocGo paid Castaldi under its bonus pay scheme.

14. Castaldi's written consent is attached as **Exhibit 1**.

15. Castaldi brings this class and collective action on behalf of herself and similarly situated DocGo employees paid under its bonus pay scheme.

16. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees DocGo paid under its bonus pay scheme during the past 3 years through final resolution of this action (the "FLSA Collective").**

17. Castaldi also seeks to represent a Pennsylvania Rule 23 class defined as:

> **All hourly employees who worked in, or were based out of, Pennsylvania[1] that DocGo paid under its bonus pay scheme**

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of where the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemtry, Inc.*, No. CV 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

        **during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

18. Castaldi also seeks to represent a New Jersey Rule 23 class defined as:

        **All hourly employees who worked in New Jersey, who DocGo paid under its bonus pay scheme at any time during the past 6 years through final resolution of this action ("New Jersey Class Members").**

19. The FLSA Collective Members, Pennsylvania Class Members, and New Jersey Class Members are collectively referred to as the "Hourly Employees."

20. DocGo is a Delaware corporation headquartered in New York City, New York.

21. DocGo may be served through its agent for service: **Business Filings Incorporated, 187 Wolf Road, Suite 101, Albany, New York 12205**.

## FLSA COVERAGE

22. At all relevant times, DocGo was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, DocGo was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, DocGo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, DocGo's annual gross volume of sales made or business done exceeded $1,000,000 per year.

26. At all relevant times, the Hourly Employees were DocGo's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

28. DocGo touts itself as "shaping the future by reimagining the way healthcare is delivered … [with its] proprietary technology and skilled clinicians deliver[ing] population health programs for governments, value-based arrangements for payers, medical transportation for hospitals, and mobile healthcare solutions that help keep patients at home and out of the hospital."[2]

29. DocGo operates in 31 states and employs more than 5,000 employees.[3]

30. DocGo advertises open positions across the country and solicits applications for these positions through its website.[4]

31. To meet its business objectives, DocGo hires employees, including Castaldi and the other Hourly Employees, to provide medical treatment and transport to its patients.

32. DocGo employed Castaldi as an EMT from around October 2022 through December 2023 in Pennsylvania and New Jersey.

33. Castaldi's job duties included assessing patients, providing first aid and basic life support, transporting patients via ambulance, and communicating with other emergency services and medical staff.

34. Castaldi typically worked approximately 4 days a week and 12 hours a day "on the clock."

35. DocGo paid Castaldi approximately $23.50 an hour.

36. The other Hourly Employees work similar schedules "on the clock."

---

[2] https://docgo.com/ (last visited October 16, 2025).
[3] https://docgo.com/career/ (last visited October 16, 2025).
[4] *Id.*; *see, e.g.*, https://docgo.com/career/emergency-medical-technician-emt-b/ (last visited October 16, 2025).

37. DocGo required Castaldi and the other Hourly Employees to report their "on the clock" hours via the timekeeping system DocGo selects and controls.

38. So DocGo knows Castaldi, and the other Hourly Employees, regularly work more than 40 hours in a week.

39. But DocGo does not pay them overtime at the required premium rates.

40. Rather, DocGo pays its Hourly Employees under its bonus pay scheme.

41. Specifically, DocGo agrees to pay and subsequently pays Castaldi and the other Hourly Employees non-discretionary bonuses, such as sign on bonuses, call bonuses, and shift bonuses, as well as hourly shift differentials, if the Hourly Employees meet DocGo's criteria.

42. But DocGo excludes these non-discretionary bonuses and shift differentials from its Hourly Employees' regular rates of pay.

43. For example, in DocGo's offer email to Castaldi it agreed to pay her, and subsequently paid her a $2,500 sign on bonus, call bonuses, and shift differentials, but excluded this remuneration from her regular rate of pay for overtime purposes:

> Good afternoon Stephanie:
> **Congratulations!** It was a pleasure speaking with you today.
> On behalf of Ambulnz by DocGo, I would love to extend you an offer to join us as a full-time EMT for PA at the rate of $21/hr plus the call bonus, as well as the **$2,500 sign on bonus** paid out over one year. Please note that the call bonus, sign on bonus, and potential night shift differential will get your pay rate well above the initial rate.

44. Thus, even though Castaldi worked overtime hours, DocGo did not pay her overtime at a rate of at least 1.5 times her regular rate of pay based on all remuneration.

45. While Castaldi's regular rate should have increased proportionally to the amount of bonus and shift differential compensation Castaldi earned, DocGo paid her as if his regular rate was just $23.50 (her base hourly rate).

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

46. Castaldi brings her claims on behalf of herself and the other Hourly Employees.

47. DocGo's bonus pay scheme victimized Castaldi and the other Hourly Employees.

48. Castaldi worked with other Hourly Employees who indicated they were subject to DocGo's bonus pay scheme.

49. Based on her experience with DocGo, Castaldi is aware DocGo's bonus pay scheme was imposed on other Hourly Employees.

50. Castaldi and the Hourly Employees are similarly situated in the most relevant respects.

51. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

52. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

53. Rather, DocGo's bonus pay scheme renders Castaldi and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages.

54. DocGo's records show the number of "on the clock" hours worked each week by the Hourly Employees.

55. DocGo's records also show the non-discretionary bonuses DocGo excluded from their regular rates of pay.

56. The back wages owed to Castaldi and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

57. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to DocGo's records, and there is no detraction from the common nucleus of liability facts.

58. Therefore, the issue of damages does not preclude class or collective treatment.

59. Castaldi's experiences are typical of the experiences of the other Hourly Employees.

60. Castaldi's interests are aligned with the Hourly Employees.

61. All the Hourly Employees share a common interest in obtaining the unpaid wages and damages owed under federal, Pennsylvania, and New Jersey law.

62. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

63. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and DocGo will reap the unjust benefits of violating the FLSA, PMWA, WPCL, and NJWHL.

64. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

65. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

66. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

67. Among the common questions of law and fact are:

   a. Did DocGo pay the Hourly Employees non-discretionary bonuses and/or shift differentials;

   b. Did DocGo exclude this compensation when calculating the Hourly Employees' regular rates of pay for overtime purposes;

   c. Did DocGo pay the Hourly Employees overtime at the required premium rate, based on all remuneration; and

   d. Were DocGo's FLSA, PMWA, WPCL, and NJWHL violations willful?

68. As part of its regular business practices, DocGo intentionally, willfully, and repeatedly violated the FLSA, PMWA, WPCL, and NJWHL with respect to the Hourly Employees.

69. There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

70. This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

71. The Hourly Employees are known to DocGo, are readily identifiable, and can be located through DocGo's business and personnel records.

### DOCGO'S VIOLATIONS WERE WILLFUL

72. DocGo knew it was subject to the FLSA's, PMWA's, and NJWHL's overtime provisions.

73. DocGo knew it was subject to the WPCL's earned wages provisions.

74. DocGo knew the FLSA, PMWA, and NJWHL require it to pay non-exempt employees, including the Hourly Employees, overtime at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

75. DocGo knew there was no *bona fide* dispute these wages were due.

76. DocGo knew each Hourly Employee worked more than 40 hours in at least one workweek during the 6 years before this Complaint was filed because it recorded their "on the clock" hours via its timekeeping system.

77. DocGo knew the Hourly Employees were its hourly employees.

78. DocGo's failure to pay its Hourly Employees premium overtime wages of at least 1.5 times their regular rates of pay for hours worked in excess of 40 in a was not reasonable or in good faith.

79. DocGo knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA, PMWA, WPCL, and NJWHL.

80. DocGo knowingly, willfully, and/or in reckless disregard carried out its bonus pay scheme that deprived the Hourly Employees of overtime wages at the required premium rate, in violation of the FLSA, PMWA, WPCL, and NJWHL.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

81. Castaldi brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

82. DocGo violated, and is violating, the FLSA by employing non-exempt employees such as Castaldi and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

83. DocGo's unlawful conduct harmed Castaldi and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

84. Accordingly, DocGo owes Castaldi and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

85. Because DocGo knew or showed reckless disregard for whether its bonus pay scheme violated the FLSA, DocGo owes Castaldi and the other FLSA Collective Members these wages for at least the past 3 years.

86. DocGo is also liable to Castaldi and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

87. Finally, Castaldi and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

88. Castaldi brings her PMWA claim as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

89. The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

90. At all relevant times, DocGo was subject to the PMWA because DocGo was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

91. At all relevant times, DocGo employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

92. The PMWA requires employers like DocGo to pay non-exempt employees like the Pennsylvania Class Members overtime at a rate not less than 1.5 times the regular rate of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

93. DocGo violated, and is violating, the PMWA by employing the Pennsylvania Class Members for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

94. DocGo's unlawful conduct harmed the Pennsylvania Class Members by depriving them of the overtime wages they are owed.

95. Accordingly, DocGo owes the Pennsylvania Class Members the difference between the rate actually paid and the required premium overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

96. Finally, the Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

**COUNT III**
**FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL**
**(PENNSYLVANIA CLASS)**

97. Castaldi brings her WPCL claims as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

98. DocGo's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

99. At all relevant times, DocGo was subject to the WPCL because DocGo was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

100. At all relevant times, DocGo employed each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

101. The WPCL requires employers, like DocGo, to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

102. DocGo violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

103. The Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

104. DocGo's unlawful conduct harmed the Pennsylvania Class Members by depriving them of their earned wages.

105. DocGo's refusal to pay the Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

106. Rather, DocGo knowingly failed to pay the Pennsylvania Class Members earned wages.

107. Accordingly, DocGo owes the Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

108. DocGo also owes the Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages or $500, whichever is greater. *See* 43 PA. STAT. § 260.10.

109. Finally, the Pennsylvania Class Members are entitled to recover their attorney's fees and costs. *See* 43 PA. STAT. § 260.9a(f).

## COUNT IV
### FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
### (NEW JERSEY CLASS)

110. Castaldi brings her NJWHL claim on behalf of herself and the other New Jersey Class Members pursuant to FED. R. CIV. P. 23.

111. DocGo's alleged conduct violates the NJWHL (N.J.S.A. 34:11-56a, *et seq.*).

112. At all relevant times, DocGo was subject to the NJWHL because DocGo was (and is) an "employer" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

113. At all relevant times, DocGo employed Castaldi and the other New Jersey Class Members as its covered "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(f) and (h).

114. The NJWHL requires employers, like DocGo, to pay non-exempt employees, including Castaldi and the other New Jersey Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

115. Castaldi and the other New Jersey Class Members are entitled to overtime wages under the NJWHL.

116. DocGo violated, and is violating, the NJWHL by employing the New Jersey Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

117. DocGo's unlawful conduct harmed the New Jersey Class Members by depriving them of the overtime wages they are owed.

118. Accordingly, DocGo owes the New Jersey Class Members the difference between the wages actually paid and the overtime wages actually earned, which remain outstanding. *See* N.J.S.A. 34:11-56a25.

119. In violating the NJWHL, DocGo acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Jersey law.

120. Thus, DocGo is also liable to the New Jersey Class Members for an additional amount equal to 200% of their unpaid wages as liquidated damages. *See* N.J.S.A. 34:11-56a25.

121. Finally, the New Jersey Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* N.J.S.A. 34:11-56a25.

## JURY DEMAND

122. Castaldi demands a trial by jury.

## RELIEF SOUGHT

Castaldi, individually and for the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing written consents;

b. An Order certifying the classes requested in this complaint;

c. An Order appointing Castaldi and her counsel to represent the interests of the Hourly Employees;

d. An Order finding DocGo liable to Castaldi and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding DocGo liable to the New Jersey Class Members for their unpaid wages under the NJWHL, plus damages in an amount equal to 200% of their unpaid wages;

f. An Order finding DocGo liable to the Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, plus all available penalty wages;

g. An Order finding DocGo liable to the Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

h. A Judgment against DocGo awarding the Hourly Employees all their unpaid wages, liquidated damages, treble damages, statutory damages, penalty wages, and any other penalties available under the FLSA, PMWA, WPCL, and/or NJWHL;

i. An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

j. Pre- and post-judgment interest at the highest applicable rates; and

k. Such other and further relief as may be necessary and appropriate.

Dated: October 24, 2025                                Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Richard J. Burch*
    Richard J. (Rex) Burch
    NY Reg. No. 6154876
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR CASTALDI AND THE HOURLY EMPLOYEES**